IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ARMIN WAND, III,

                  Plaintiff,

      v.

BECKEY KRAMER, et al.

                  Defendants.

OPINION AND ORDER

18-cv-500-wmc

*Pro se* plaintiff Armin Wand, III is proceeding in this lawsuit on Eighth Amendment deliberate indifference and Wisconsin negligence claims against defendants Leonard Johnson, Becky Kramer and Jolinda Waterman. In particular, Wand challenges defendants' handling of his need for medical care related to his appendicitis in February of 2018. Currently before the court are several motions brought by Wand (dkt. ##189, 195, 199-203, 206, 208, 214), and the parties' cross motions for summary judgment (dkt. ##142, 151, 159).

As for the motions for summary judgment, the evidence of record does not establish that either Wand or defendants are entitled to judgment as a matter of law on his Eighth Amendment deliberate indifference claims against defendants Kramer and Johnson. However, defendants are entitled to summary judgment with respect to Wand's Eighth Amendment claim against defendant Waterman, as well as Wand's state law negligence claims against all defendants. Accordingly, this case will proceed to trial on Wand's Eighth Amendment deliberate indifference claims against Johnson and Kramer. As for Wand's remaining motions, the court will also deny them, except for his renewed request for assistance in recruiting counsel. Particularly since it may be necessary for Wand to adduce

expert testimony to prove his claim against defendant Kramer at trial, the court will attempt to recruit counsel on Wand's behalf.

## I.   Cross motions for summary judgment (dkt. ##142, 151, 159)

### UNDISPUTED FACTS[1]

Plaintiff Armin Wand was incarcerated at WSPF in February of 2018, when he suffered appendicitis.  Each of the defendants were working at WSPF:  Leonard Johnson was a Correctional Officer; Becky Kramer was a Nurse Clinician; and Jolinda Waterman was working as a registered nurse and the Health Services Manager ("HSM").

On the evening of February 12, 2018, Wand started to experience severe stomach pain and vomiting.  Because Officer Johnson was working in Wand's unit at that time, Wand claims to have told him about his symptoms, but that Johnson failed to alert the unit sergeant.[2]  For his part, Johnson does not recall any interaction with Wand that evening.  Still, Johnson attests that *if* Wand had reported those symptoms to him, (1) he would have contacted the unit sergeant; and (2) a supervisor would have determined whether to call the Health Services Unit ("HSU").  Johnson further avers that the unit

---

[1] Unless otherwise noted, the following facts are material and undisputed.  The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support, all viewed in a light most favorable to the non-moving party.

[2] In his proposed findings of fact, Wand asserts that he informed Johnson that his pain "increased near his appendix," citing to his complaint.  However, in his complaint, Wand alleged only that he informed Johnson that he was vomiting and having "mild stomach pain."  (*See* Am. Compl. (dkt. #15) ¶ 1.)  Since neither Wand's complaint nor declaration includes an assertion that he informed Johnson that the pain was worse near his appendix, however, the court has no evidentiary basis to accept this proposed finding of fact.

sergeant is also responsible for answering the emergency intercom, and that Wand had an emergency call button in his cell.[3]  Finally, Johnson points out that the unit logbook does not show any entries reflecting Wand's requests for medical attention on February 12.

Regardless, the following day, February 13, a unit sergeant reported to the HSU that Wand had complained over the emergency intercom of vomiting, nausea and stomach pain.[4]  Nurse Clinician Kramer then examined him at approximately 2:50 p.m. that day. Wand avers that he informed Kramer:  (1) he could not lie down to sleep without his stomach hurting; (2) his pain was on the right side of his stomach; (3) his pain rated a 10 out of 10; and (4) he believed that the pain was being caused by his appendix.[5]  He further avers that when Kramer felt his stomach on the lower right side, the pain increased, causing him to "cry out with tears in his eyes."  (Am Compl. (dkt. #15) ¶ 9.)

However, Kramer attests that:  (1) Wand's vital signs were within normal limits; (2) Wand's abdomen was soft and nondistended with bowel sounds present in all four quadrants; and (3) while his lips were dry, Wand stated that he was very thirsty.  Based on those symptoms and her nursing experience, Kramer believed Wand's symptoms were gastrointestinal with a potential for dehydration; she did not believe his symptoms were

---

[3]  Wand claims that the unit sergeant does not always respond to the emergency intercom immediately.  He adds that he pushed his emergency button two times -- once on February 13 and once on February 14.  However, Wand does not directly dispute the availability of an intercom in his cell, nor suggest that any defendants were involved in those calls.

[4]  Wand includes additional proposed findings of fact related to his efforts to be seen by medical staff, but none involve the defendants.  Accordingly, the court deems those proposed findings largely immaterial to the pending summary judgment motions.

[5]  Defendants object to Wand's proposed findings of fact as drawn from his amended complaint, but because it is verified, Wand's amended complaint serves as an affidavit for purposes of summary judgment.  *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).

3

emergent or urgent, such that she would need to consult with an advanced care provider. In particular, Kramer did *not* believe Wand's symptoms suggested an appendix-related problem because his abdominal assessment was within normal limits, he had no rebound tenderness and he denied lower right quadrant discomfort.  Rather, according to Kramer, Wand kept pointing to his stomach area as the source of his complaints, and he never mentioned his appendix.[6]  Following her assessment, Kramer provided Wand an order for Pepto Bismol, Tylenol and ice chips for dehydration, as well as ordered that he be placed on a liquid diet for two days, with no work or recreation.  Finally, Kramer scheduled Wand for a follow-up appointment on February 15 and informed him to notify HSU if his symptoms worsened.

The next afternoon, February 14, the unit sergeant reported to the HSU that Wand's stomach pain had worsened, so Kramer again saw Wand in the HSU that day at approximately 5:45 p.m.  According to Kramer, Wand was having difficulty walking to the HSU, holding the right side of his lower quadrant, and reporting sharp pain since about 3:30 or 4:00 p.m.  Kramer further noted that Wand was "grimacing, guarding his [right lower quadrant] as compared to 24 hours prior."  (Ex. 1001 (dkt. #163-1) 9-10.)  Kramer further reported that Wand said his nausea and vomiting had stopped overnight, but that

---

[6]  Wand purports to object to Kramer's version of their exchange, but does not point to any direct *evidence* disputing Kramer's assessment.  Instead, he cites the affidavit of Timothy Lant, a prisoner with whom Wand says he spoke while waiting to be seen in the HSU.  Lant attests that Wand told him about his pain in his right side and how HSU staff handled his reported symptoms.  (Lant Aff (dkt. #182).)  However, Lant does not have personal knowledge about the interaction between Wand and Kramer.  At most, Lant may be able to testify to Wand's prior consistent statement or excited utterance regarding his symptoms at the time, which a jury might credit over Kramer's assessment, as well as discount Kramer's version of her contemporary conversation with Wand.  Of course, if the court were to assume that Wand would dispute Kramer's version directly, which it could since he is a *pro se* litigant, this would directly contradict Kramer's version.

4

the pain had localized to the right lower quadrant since then.  When Kramer asked Wand if he still had his appendix, Wand allegedly responded, "What's that?"  (Kramer Decl. (dkt. #163) ¶ 15.)  At that point, Kramer contacted the on-call advanced care provider, Dr. Wheatley, who directed her to send Wand to the local emergency room.

Following Dr. Wheatley's directive, Kramer saw that Wand was transported to Gundersen Hospital in Boscobel, Wisconsin, where he underwent an appendectomy.  (Ex. 1001 (dkt. #163-1) 59-65.)  While Wand was still recovering at the hospital, however, a CT scan revealed a buildup of fluids in Wand's stomach and lungs.  As a result, on February 24, Wand was transferred to the University of Wisconsin-Madison Hospital ("UW Hospital") for management of an "intra-abdominal abscess and right pleural effusion." More specifically, Wand underwent antibiotic therapy, as well as placement of an abdominal drain for the abscess and insertion of a right chest tube for pleural effusion.  On February 28, Wand's chest tube was removed and he was discharged from the hospital and returned to WSPF, although his abdominal drain remained in place, and a follow-up appointment with UW Health was scheduled for March 23, 2018, for a drain check.

Back at WSPF, Wand had a nursing appointment on March 7.  As the Health Service Manager, defendant Waterman stopped in during that appointment and viewed his drain device.  At that time, Wand rated his pain as a 2 out of 10.  The next day, Nurse Practitioner McArdle met with Wand to remove his staples.  McArdle recorded that Wand reported "feeling much better."  (Ex. 1001 (dkt. #163-1) 3-4.)  As to the drain, McArdle also noted that she spoke with Dr. Kebar at UW Hospital, who recommended she call the Gunderson Boscobel emergency room, which she did and was told that "all that needed to

5

be done was to remove stitches or staples holding drain and remove it." (Waterman Decl. (dkt. #162) ¶ 10; Ex. 1001 (dkt. #163-1) 3-4.)  Following those instructions, McArdle scheduled Wand for removal of his drain at WSPF.

On March 12, McArdle next attempted to remove the drain per the advice she received from the Gunderson-Boscobel emergency room, but she stopped short because Wand was experiencing pain.  Instead, she decided she would wait until Dr. Patterson was available to assist with the removal.  The next day, McArdle and Patterson removed the drain.  At that time, McArdle noted that Wand tolerated the procedure, and the drain site was cleaned and Bacitracin applied.  According to Waterman, UW Health cancelled Wand's March 23 follow up for a drain check.

Waterman explains that she did not have the authority to refer patients to offsite providers or to override the treatment decision of the advanced care providers in the HSU, which includes nurse practitioners and physicians.  Waterman further attests that she never cancelled any of Wand's offsite appointments to save the institution money, as Wand claims, and that she lacks authority to schedule or cancel offsite appointments, except in emergent situations; advanced care providers make those referrals based on their medical judgment.  Waterman explains that in Wand's situation, McArdle and Gundersen Boscobel Hospital provided input with respect to how Wand's drain should be removed, and that she does not provide input with respect to decisions of that nature.  Furthermore, Waterman attests that she had no reason to believe that Wand's medical concerns were not being appropriately addressed because:  (1) he was being seen frequently by HSU after his February 28 discharge; and (2) he reported his pain was lessening in the weeks following

surgery.

In June 2018, Wand wrote to Waterman asking about his follow-up appointments with UW Health and Gunderson.  Waterman responded that UW Hospital cancelled his March appointment because the drain had been removed by Dr. Patterson, and that UW Hospital cancelled his Radiology appointment that had been scheduled for April. Waterman attests that she was not involved in cancelling either appointment; rather, UW Hospital made those decisions.  (Waterman Decl. (dkt. #162) ¶ 19.)

Finally, Wand did not serve a notice of claim upon the Attorney General under Wis. Stat. § 893.82, regarding his claims in this lawsuit.

OPINION

I.    **Cross Summary Judgment Motions**

The parties have filed cross motions for summary judgment.  Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  When the parties cross-move for summary judgment, the court looks to the burden of proof that each party would bear on an issue at trial and requires that party to go beyond the pleadings to affirmatively establish a genuine issue of material fact.  *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456,

461 (7th Cir. 1997). If either party fails to establish the existence of an element essential to his or her case, and on which that party will bear the burden at trial, then summary judgment against that party is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

### A. Eighth Amendment Deliberate Indifference

The Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). For purposes of summary judgment, there is no dispute that Wand's appendicitis presented a serious medical condition. Instead, the parties here dispute whether defendants' response to that condition constituted deliberate indifference.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). It is *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws

8

that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense"). In particular, a jury may "infer deliberate indifference on the basis of a physician's treatment decision [when] th[at] decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)). The court addresses the evidence supporting plaintiff's claim against each of the named defendants under this standard below.

### 1. Johnson

Defendant Johnson seeks judgment in his favor because plaintiff has not submitted evidence suggesting that he was aware Wand was suffering from a serious medical need the night of February 12, 2018. Defendants maintain that if Wand had reported appendix pain, there would be a record of it, and since the unit logbook contained no such record, no reasonable jury would believe Wand's version of their exchange that evening. However, the absence of a record that Wand complained to Johnson does not render his version of

9

their interaction implausible.  If a jury finds Want's version more credible, it could conclude that Johnson more likely than not failed to follow his normal practice of reporting inmate health concerns that day, particularly if he were found to be acting with deliberate indifference to Wand's reported pain.  Regardless, for purposes of defendants' motion for summary judgment, the court must accept Wand's version of their interaction as true, and a reasonable fact-finder may conclude that Johnson had sufficient information to infer that Wand was experiencing a serious medical need, since Wand attests to telling him about his stomach pain and vomiting.

Defendants cite two decisions in support of their motion, but both are distinguishable.  First, defendants argue that there is no evidence suggesting that Wand was suffering a medical emergency the night of February 12, 2018.  In support, they cite *Taylor v. Malcomson*, No. 13-C-038, 2014 WL 4176074, at *10 (E.D. Wis. Aug. 20, 2014), in which the court granted judgment in favor of two officers who responded to the plaintiff's report of a wound on his leg by directing the plaintiff to submit a medical request, or submitting a request for him.  *Id.*  Although days later the plaintiff was diagnosed with cellulitis and "presumed" MRSA, the court concluded that the officers' minimal involvement in the material events did not demonstrate a culpable state of mind.  *Id.* at 9. In particular, the court noted that one officer simply collected the plaintiff's medical request slip, and the other directed him to submit a medical request form, and that the severity of the plaintiff's condition was not obvious at that point.  *Id.* at 10.  Further, the court noted that neither officer ignored the plaintiff's condition.  *Id.*  This decision is distinguishable in three critical ways:  (1) Johnson denies that Wand complained to him

10

about his condition, (2) Wand claims that Johnson was aware that he was vomiting and had stomach pain; and (3) it is undisputed that Johnson did not take *any* action in response to Wand's complaints.

Although defendants would suggest that Wand's report about vomiting and stomach pain may not have alerted Johnson to a medical *emergency*, Johnson was not entitled to completely ignore Wand's report of pain. Indeed, the court noted as much in *Taylor*. *Id.* (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997) ("delays in treating painful conditions that are not life-threatening can support Eighth Amendment claims"). Furthermore, to the extent defendants contend that Wand's condition did not *in fact* constitute a serious medical need at that point, Wand's subsequent emergency appendectomy and abscess certainly work against such a finding. *See, e.g.*, *Chavez v. Cady*, 2017 F.3d 901, 905-06 (7th Cir. 2000) (record supported a finding that plaintiff was suffering a serious medical need when he complained of "pain and distress" and then later was treated for a ruptured appendix and abscess).

Second, defendants argue that Johnson cannot be held liable for a constitutional violation because his involvement was too limited, directing the court to *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765-66 (7th Cir. 2002). In *Jackson*, however, the Seventh Circuit was addressing whether the driver of a van in which a detainee was being transported could be held liable for failing to respond to his request to be taken to the hospital because he had taken numerous pills. *Id.* at 764. The Seventh Circuit concluded that the driver could not be held liable, since he had no authority over detainees, could not remove their restraints, and his responsibilities did not include providing medical care to

11

the people he transported.  *Id.* at 765.  Finally, the court concluded that the defendant had no reason to infer that the plaintiff was actually in physical distress.  *Id.* at 766.

Johnson's alleged interaction with Wand may have been brief, but the situation is otherwise substantially different than that of the van driver in *Jackson*.  Johnson does not suggest that he lacked the authority to respond to Wand's need for medical care, and at least according to Wand, Johnson had reason to believe that he needed medical attention. Ultimately, the guiding principle with respect to Johnson is that a "guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment" exhibits deliberate indifference.  *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015); *see also Petties v. Carter,* 836 F.3d 722, 729 (7th Cir. 2016) ("[M]ost obvious" among the "several circumstances that can be enough to show deliberate indifference ... is a prison official's decision to ignore a request for medical assistance.").  As such, the fact that Wand may have interacted with other prison officials after he informed Johnson about his condition does not entitle him to judgment as a matter of law.  Rather, the pertinent question is whether *at the time* Wand and Johnson interacted, Wand alerted him to a serious medical need and Johnson ignored it.  If a jury were to believe Wand, it could reasonably conclude that Johnson did just that, rather than pass Wand's complaint on to HSU where someone with medical expertise could make an informed evaluation.  Therefore, Johnson is not entitled to summary judgment based on a lack of evidence of deliberate indifference. Nor is Wand, since if a jury believed *Johnson's* testimony that he did not interact with Wand the evening of February 12, the jury could not reasonably hold him liable for

deliberate indifference.  As such, neither Wand nor Johnson is entitled to summary judgment on this basis.

Finally, there remains the question of causation.[7]   Johnson argues that no reasonable jury could credit Wand's version of events given that it is undisputed he had a call button in his cell, allowing him to continue to complain about his symptoms, and there is also no record of his having used it after his claimed interaction with Johnson.  Again, however, Wand claims to have pressed his emergency call button with no response, and while he has no explanation for it (save one involving inadmissible hearsay), neither is there definitive evidence disproving his version of events.

### 2.  Kramer

As for Nurse Clinician Kramer, material factual disputes also preclude judgment in either Kramer's or Wand's favor.  Taking Wand's version of their interactions as true, a reasonable fact-finder could conclude that her decision to treat Wand for dehydration and schedule him for a follow-up was such a significant "departure from accepted professional standards or practices" that there is a question about whether she exercised professional judgment.  *Pyles*, 771 F.3d at 409.  Specifically, according to Wand, he *explicitly* told her that his pain around his appendix was a 10 out of 10, and that when she palpated the right

---

[7] Although not raised by defendants, there is a second causation problem for plaintiff, since even after an initial examination by Nurse Kramer the next day, no action was taken in light of his symptoms.  However, since not argued by defendants, and the fact that a reasonable jury could find another clinician might have seen him, or Kramer might have reached a different conclusion had she been given credible evidence that plaintiff had been complaining of similar symptoms for some 24 hours, this, too, will have to await trial to be resolved.

side of his stomach area, he cried out in pain.[8]  The Seventh Circuit has held that a prison official who is aware of a serious risk of appendicitis exhibits deliberate indifference by doing little more than providing the prisoner medication to treat the pain.  *Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000) ("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not simply ignored.") (citation omitted).  Here, at least according to Wand, Kramer did essentially *nothing* in the face of similar symptoms.

Defendants raise the fair point that Kramer acted promptly the next day (February 14), arguably as soon as she learned that Wand's symptoms had worsened, contacting an advanced care provider who then directed that he go to the emergency room.  However, the fact remains that Wand and Kramer tell different stories about how he presented when she examined him on February 13.  Most critically, although Wand claims that he had

---

[8] Defendants further cite *Scott v. Harris*, 550 U.S. 372 (2007), arguing that the court should disregard Wand's assertions that he was suffering from lower right quadrant pain and reported such pain, since they are clearly contradicted by his medical records, and Wand has no corroborating evidence that his medical records are in error, much less been falsified.  In support, defendants cite to this court's decision in *Davis v. Gee*, No. 14-cv-617-wmc, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017), in which the plaintiff was explicitly pursuing a theory that defendants falsified his medical records, and this court rejected plaintiff's theory of a conspiracy to falsify his records as speculative.  *Id.*  Here, Wand is not charging Kramer with falsifying his records; rather, he disputes Kramer's version of their encounter, and this court declines to disregard Wand's version of their interaction solely because he disputes the accuracy of what Kramer subsequently recorded in his medical records.  *See Stoik v. Whitman*, No. 18-cv-699-wmc, 2020 WL 5994512, at *7 (W.D. Wis. Oct. 9, 2020) (finding plaintiff's assertion that he was seen by a physician *not* blatantly contradicted by the record even though the record of his treatment did not reflect that an examination took place).

14

significant lower right quadrant pain, and that he cried out in pain when Kramer felt that area of his abdomen, Kramer denies that he presented with such discomfort.

Given that Kramer agrees that lower right quadrant pain would be a symptom of appendicitis, if a jury were to believe Wand's version of their interaction, it could further reasonably conclude that treating him for dehydration and scheduling him for a follow up, rose to the level of blatant disregard of an obvious need to alert an advanced care provider. *See Rivera v. Kettle Moraine Corr. Inst.*, No. 14 C 6, 2016 WL 2766642, at *4 (E.D. Wis. May 12, 2016) (denying motion for summary judgment for nurse because, although she was subjectively unaware of his appendicitis, she was aware that plaintiff was suffering from severe abdominal pain, was HIV positive and had diarrhea, but only provided him Tylenol rather than sending him to urgent care). Accordingly, the court cannot conclude that Kramer is entitled to summary judgment in her favor on the merits of plaintiff's Eighth Amendment claim.

### 3. Johnson and Kramer's Qualified Immunity Defense

Nor are Johnson or Kramer entitled to qualified immunity, which "protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 549-50 (7th Cir. 2017)). As of February 2018, it was well established that prisoners were entitled to be free from deliberate indifference to their serious medical needs. Nonetheless, defendants' position is that because they did not

ignore Wand's condition when it worsened on February 14, they could not have violated Wand's clearly established rights.

In particular, they direct the court to *Connor v. Harke*, No. 18-cv-961, 2020 WL 998538 (E.D. Wis. Mar. 2, 2020), in which the plaintiff Connor complained about pain related to an existing hernia. When he alerted a correctional officer to his pain, that officer relayed Connor's symptoms to the sergeant, who then reported the plaintiff's pain to the HSU. However, when Connor learned that he would be responsible for a co-pay amount to be seen, he declined to go to the HSU. At that time, the HSU staff member represented that they then reviewed his medical file, noted that he had a hernia, and concluded that his situation did not constitute a medical emergency. *Id.* at 2. Later that evening, after he vomited multiple times, Connor was transported to the emergency room. The court granted summary judgment in favor of the correctional officers and HSU nurse that handled the phone call, reasoning that the nurse exercised professional judgment and the correctional officers did not ignore the plaintiff's reported symptoms and were entitled to defer to the nurse's judgment. *Id.* at *4-5.

The same reasoning in *Connor* does not apply here. Unlike the parties in *Connor*, here the parties dispute whether (1) Wand complained to Johnson on February 12, 2018; and (2) the symptoms Wand reported to Kramer on February 13, 2018. The court accepts that Kramer is entitled to deference to the extent that she exercised medical judgment, but Wand's version of their interaction suggests that she instead ignored his clear symptoms of appendicitis. Given the material factual disputes related to whether Wand complained about his symptoms to Johnson, and how Wand presented to Kramer, neither defendant

16

is entitled to summary judgment on qualified immunity grounds. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1010-14 (7th Cir. 2013) (denying interlocutory appeal because qualified immunity defense turned on disputed facts).

### 4. Waterman

Unlike Johnson and Kramer, no reasonable jury could find that Waterman's cancellation of Wand's follow-up appointment exhibited deliberate indifference, as opposed to negligence or, at worst, gross negligence. The only offsite appointment that Waterman is alleged to have cancelled was Wand's March 2018 appointment at the UW Hospital to check the drain. However, there is no dispute that two weeks before that scheduled appointment, Dr. Patterson and Nurse Practitioner McArdle had removed Wand's drain altogether. No evidence of record suggests that Waterman had reason to believe that the removal did not go well, nor that Wand needed to keep an appointment to check a drain already removed. On the contrary, Waterman knew that two advanced care providers -- NP McArdle (after consultation with the emergency department at Gunderson) and Dr. Patterson -- agreed that Wand's medical needs could be addressed within the institution, apparently leaving no need for follow up at the UW. Wand may disagree with McArdle and Patterson's decision to remove his drain at the institution, but no evidence of record indicates that this decision was not grounded in their medical judgment. More importantly, there is no indication that Waterman had reason to believe that Wand should be seen at UW Hospital despite already having his drain removed. Perhaps Wand could argue that Waterman was negligent in making that judgment on her

17

own, but no reasonable jury could find the cancellation indicated deliberate indifference to a serious medical need on this record.  Indeed, Wand has submitted *no* evidence that he even had a medical need following the apparently successful removal of his abdominal drain, much less a serious one.  Accordingly, Waterman is entitled to judgment as a matter of law with respect to Wand's Eighth Amendment claim against her.

### B. Wisconsin Negligence Claims

Defendants seek judgment as a matter of law with respect to Wand's Wisconsin negligence claims because defendants were all state employees and Wand failed to follow Wisconsin's notice of claim requirements set forth in Wis. Stat. § 893.82.  Moreover, they point out that claims brought under Wisconsin's medical malpractice statute do not apply to state employees unless Wisconsin's notice requirements are satisfied.  *See Smith v. Hentz*, No. 15-cv-633-jdp, 2018 WL 1400954, at *1-3 (W.D. Wis. Mar. 19, 2018) (citing *Lamoreux v. Oreck,* 2004 WI App 160, ¶ 50, 275 Wis. 2d 801, 828, 686 N.W.2d 722, 735 (dismissing medical malpractice action against state employee because plaintiff failed to satisfy the applicable notice of claim requirements)).  Wand does not dispute that he failed to file a notice of claim in accordance with the statute.  Accordingly, defendants are entitled to judgment in their favor with respect to Wand's Wisconsin negligence claims against them.

### II.   Wand's motions (dkt. ##189, 195, 199-203, 206, 208, 214)

Wand has also filed ten motions or objections unrelated to the parties' dispositive

18

motions.  The court begins with Wand's motion for recusal, as well as his objections to the defendants' motion to stay the pretrial deadlines and to reset their reply deadline.  (Dkt. ##199, 200, 206.)  Wand argues that the court should not have granted defendants' request for an extension on the ground that one of their attorneys was out of the office, and he believes that the court exhibited bias in delaying trial, granting defendants' motion for an extension or for a stay without waiting for him to respond, and ruling against him. The court holds no bias against Wand; the defendants' motion was granted because defendants showed good cause, and when the court has ruled against Wand or declined to grant his requests for assistance in recruiting counsel, it made those rulings consistent with applicable law.  Accordingly, the court will overrule Wand's objections and denying Wand's motion for recusal.

Next, the court will grant Wand's renewed his request for assistance in recruiting counsel.  (Dkt. #208.)  Wand has ably and aggressively litigated this case, and the court continues to believe that he has a clear command on the relevant facts and legal standards. Further, Wand appears capable of proceeding to trial on his claim against Johnson without the help of an attorney, since his task will be to introduce evidence about their interaction on February 12, 2018, and Wand can provide that testimony from his own memory. However, Wand's competency gets him only so far with respect to his claim against defendant Kramer, which involves not only factual disputes but also may require expert testimony related to whether Kramer abandoned her professional judgment and breached the applicable standard of care in failing to alert an advanced care provider about Wand's symptoms, as well as whether others may have contributed to his injuries.  Wand represents

19

that he has been unsuccessful in his efforts to retain an expert in this case, which the court acknowledges is an extremely difficult task to accomplish for any medical malpractice claim, and only more so while incarcerated.  Under these circumstances, the court agrees that the difficulty of litigating this case exceeds Wand's abilities.  Accordingly, the court will endeavor to recruit counsel on Wand's behalf.

For that same reason, the court will also grant Wand's motion for an extension of an expert disclosure deadline and for appointment of an independent expert.  (Dkt. #214.)  Since the court is recruiting counsel for Wand, it will be for his counsel to determine whether to retain an expert for purposes of trial.

Finally, Wand's remaining five motions were filed in anticipation of trial: a motion in limine, a motion to strike his exhibit list, and three motions for a writ of habeas corpus ad testificandum.  (Dkt. ##189, 195, 201, 202, 203.)  The court will deny those motions without prejudice to renewal by his recruited counsel.

ORDER

IT IS ORDERED that:

1. Plaintiff Armin Wand's renewed motion for assistance in recruiting counsel (dkt. #208) and motion for extension regarding expert disclosure (dkt. #214) are GRANTED.

2. Plaintiff's remaining motions (dkt. ##142, 151, 189, 195, 199-203, 206) are DENIED, as provided above.

3. Defendants' motion for summary judgment (dkt. #159) is GRANTED in part and DENIED in part.  It is granted with respect to plaintiff's claims against defendant Jolinda Waterman, and plaintiff's negligence claims against defendants Johnson and Kramer.  It is denied with respect to

plaintiff's Eighth Amendment deliberate indifference claims against defendants Johnson and Kramer.

4.  At the close of this case, the clerk of court is directed to enter judgment in Waterman's favor.

5.  This matter is STAYED pending recruitment of counsel for Wand.

Entered this 29th day of January, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

21