IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARMIN WAND, III,

                                                          OPINION and ORDER

                        Plaintiff,

        v.

                                                          18-cv-500-wmc

LEONARD JOHNSON and
BECKEY KRAMER,

                        Defendants.

---

*Pro se* plaintiff Armin Wand is proceeding to trial on May 23, 2022, against defendants Leonard Johnson and Beckey Kramer on claims of deliberate indifference under the Eighth Amendment, as well as a claim of malpractice against defendant Kramer under Wisconsin common law, arising out of their handling of Wand's reports of symptoms caused by appendicitis.  On May 13, 2022, at 11:00 a.m., the court will hold the final pretrial videoconference ("FPTC").  In advance of the FPTC, this order summarizes the court's proposed voir dire, jury instructions and special verdict (attached), and addresses the pending motions in limine ("MIL"), exhibits and witnesses.  During the final pretrial conference, the court will hear additional argument on the court's proposed materials, resolve the reserved MILs, discuss exhibits and witnesses, and review trial logistics, as well as address any remaining issues the parties may wish to raise.

## I.  Voir Dire

        The court has included many of the parties' proposed questions, which are largely consistent with the court's standard questions for a case of this nature.  The court has

omitted a few of Wand's questions as repetitive or arguing his case.

## II.     Jury Instructions

The court's proposed jury instructions include its standard instructions and generally match the parties' proposed instructions.  Unless the parties provided specific arguments in favor of a pattern instruction rather than the court's standard instruction, the court has used its standard instruction.  In addition, Wand included multiple, proposed instructions (Numbers 3-5) that deviate from the Seventh Circuit pattern instructions, which the court has omitted.

Defendants also objected to Wand's inclusion of instructions for Wisconsin negligence on the ground that the court dismissed those state law claims at summary judgment.  However, in a more recent order the court reinstated the negligence claim against defendant Kramer, after recognizing that Wisconsin's notice of claim requirement does not apply to Wand's alleged malpractice claim.  (*See* 11/23/21 Op. & Order (dkt. #243) 3-4.)  Therefore, the court has included the Wisconsin negligence instructions, specifying that Wand is proceeding on his malpractice claim against Kramer alone.

## III.    Special Verdict

The court's proposed special verdict form consists of 5 questions, representing one question each for Wand's Eighth Amendment and negligence claims, one question for the measure of compensatory damages and two questions for the possible award of punitive damages.  Defendants properly objected to the formatting of Wand's special verdict since it did not require a finding of liability before reaching the question of damages.

IV. **Motions in limine**

  A. **Wand's motions in limine**

  **MIL 1 (Dkt. #285)**

  Wand seeks to exclude defendant Kramer and Jolinda Waterman from testifying as experts, since neither individual submitted a report.  Because defendants do not oppose that motion since they are testifying as lay witnesses, the motion is GRANTED.

  **MIL 2 (Dkt. #286)**

  Wand seeks to use leading questions for adverse witnesses, and in turn that defendants may not asking leading questions when cross-examining those same witnesses. Since this motion merely seeks application of the Rules of Evidence (with nuances the court will address with the parties at the FPTC), and defendants do not object, the motion is GRANTED.

  **MIL 3 (Dkt. #287)**

  Wand seeks to introduce evidence and/or argument related to the "Blue Code of Silence."  Defendants object under Federal Rule of Evidence 403, since any minimal probative value of evidence of how prison officials work in concert to violate prisoner rights and obstruct justice is substantially outweighed by the possibility that such evidence would confuse the issues and unfairly prejudice defendants.  That argument is well-taken:  Wand's claims in this lawsuit do not relate to a conspiracy or systematic deficiencies at his institution or within the Wisconsin Department of Corrections ("DOC"), and a reference to the "Blue Code of Silence" would likely confuse the issues and unfairly prejudice defendants.  Accordingly, this motion is DENIED unless defendants should open the door

3

by eliciting testimony or arguing that any DOC employee had no motive to lie.

**MIL 4 (Dkt. #288)**

Wand asks the court's permission to wear civilian clothing without restraints during trial. The Trial Preparation Order provides that Wand is free to either: (1) arrange for family members or friends to bring civilian clothing to the courthouse no later than 8:00 a.m. on the morning of the first day of trial, May 23; or (2) ask WSPF officials to transfer his civilian clothing to the clerk's office when they bring him to the courthouse for trial, understanding that Wand is responsible for arranging retrieval of that clothing in either case after the trial is over. However, the court will not order that Wand must not wear shackles: this court defers to DOC officials with respect to whether Wand must be restrained, with the caveat that the court will not permit jurors to see any restraints Wand may be wearing. That said, this does not appear to be a problem: defendants represent that Wand may be required to wear an electronic security bracelet beneath his clothing, which would not be visible to the jury. Therefore, this motion is GRANTED in part and DENIED in part.

**MIL 5 (Dkt. #289)**

Wand seeks to exclude evidence or argument regarding his disciplinary history while in DOC and the disciplinary histories of his incarcerated witnesses. In opposition, defendants report their intent to impeach these witnesses with evidence of past instances of untruthfulness under Federal Rule of Evidence 608(b). Specifically, as applicable, defendants indicate that they intend to question Wand and his incarcerated witnesses about conduct reports they have received for lying, which is probative for truthfulness. The

court is inclined to allow defendants to question Wand and his incarcerated witnesses about specific instances in which they were adjudicated guilty of a charge of lying, likely limiting the questions to asking the witness to confirm that they were disciplined by the DOC for lying on a particular date and specifically excluding any potentially prejudicial details as to the reason(s) for or extent of that discipline.  As explained below with respect to defendants' exhibits, the court is inclined to exclude any reference to documentary evidence of that discipline unless a witness denies their existence or otherwise opens the door.  Subject to those limitations and any clarification either side may request at the FPTC, therefore, this motion is DENIED.

**MIL 6 (Dkt. #290)**

Wand seeks to exclude evidence or argument of his past criminal history and the criminal histories of his incarcerated witnesses.  Defendants do not object, so the motion is GRANTED.

**MIL 7 (Dkt. #291)**

Similarly, Wand seeks to specifically exclude his 2013 convictions for first degree intentional homicide, attempted first degree intentional homicide, arson and felony murder, as well as the sentence imposed for those convictions.  Again, defendants do not object, so the motion is GRANTED.

**MIL 8 (Dkt. #292)**

Wand seeks to introduce evidence of a pattern of deliberate indifference by WSPF's Health Services Unit ("HSU").  Pointing to the arguments raised in their own MILs 3 and 4, defendants and seek to exclude evidence of past legal cases or other grievances involving

defendants, other DOC employees or the DOC more broadly under Rules 403 and 404(b). The court discusses the admissibility of other grievances or lawsuits involving defendants or the DOC in more detail below, but the court will deny this motion on relevance grounds alone. Wand is not proceeding on a systematic deficiency claim in this lawsuit, and he has not suggested that he can proffer evidence that either defendant has engaged in a pattern of deliberate indifference. Rather, Wand would like to offer the testimony of other WSPF inmates who claim to have similar experiences with WSPF's HSU. Given that Wand is proceeding on claims arising from discrete events and the unfair prejudice of introducing unrelated incidents, this motion is DENIED.

**MIL 9 (Dkt. #293)**

Wand also seeks to introduce evidence of other bad acts by the named defendants through the admission of 18 inmate grievances filed against Johnson and three inmate grievances filed against Kramer. Wand represents that the grievances against Johnson relate to "disrespect, harassment, failure to assist, and excessive force," and the grievances against Kramer include one for lying. In opposition, defendants maintain that grievances filed by other inmates are irrelevant to Wand's claims in this lawsuit, highly prejudicial, and that evidence of other grievances is inadmissible under Rule 404. Defendants' relevance argument appears on point: Wand's description of these other grievances does not suggest that this evidence relates in any way to how Johnson or Kramer handled his medical needs in February of 2018.

Regardless, evidence of other inmate grievances involving defendants is inadmissible *unless* it meets the Seventh Circuit's four-part test to determine whether "other acts"

6

evidence is admissible under Rule 404:

> First, proof of the other act must be directed towards establishing a matter in issue other than the defendant's propensity to commit like conduct. Second, the other act must be of recent vintage and sufficiently similar to be relevant to the matter in issue. Third, there must be a sufficient amount of evidence for the fact finder to conclude that the similar act was committed. And fourth, the probative value of the evidence must not be outweighed by the danger of unfair prejudice.

*Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2011).

Under this test, the only potentially admissible evidence of this nature would be an *affirmed* inmate complaint finding that one of the defendants acted with deliberate indifference to an inmate's serious medical condition. Although it appears that no such affirmed inmate complaint exists, the court will RESERVE as to whether Wand is completely precluded from admitting evidence of *any* inmate complaints in which either defendant was found to have ignored or mishandled a prisoner's serious medical needs. Accordingly, Wand will be given an opportunity at the FPTC to make a specific proffer as to one or more affirmed inmate complaints finding that either defendant acted with deliberate indifference under circumstances like those here *and* relevant to show motive, intent, preparation, plan, absence of mistake, or lack of accident under Rule 404(b). Similarly, the court will also RESERVE as to Wand's request to cross-examine Kramer about a grievance filed against her for lying, but only if he makes a proffer that such a grievance was *affirmed*. Although the court notes defendants' alternative argument that grievances filed by other inmates are inadmissible hearsay, an *affirmed* inmate complaint may be admissible under the business records exception, *see* Fed. R. Evid. 803(6), or under the residual (or "catch-all") exception in Rule 807, just as defendants invoke for similar,

past adjudications against plaintiff under Rule 608(b). Therefore, this motion is RESERVED as to the exceptions for both "other acts" evidence and impeachment for lying.

**MIL 10 (Dkt. #294)**

Wand next seeks an order precluding improper argument or testimony regarding specific allegations made in his inmate complaint related to this lawsuit. Wand is apparently concerned that defendants might try to revisit whether he adequately exhausted his administrative remedies with respect to his claim against defendant Johnson, and that defendants might further argue that defendant Kramer was not working in the HSU on February 13, 2018, until 2 p.m. In opposition, defendants state their only intent is to cross-examine Wand about any prior inconsistent statements made in his inmate complaint under Federal Rule of Evidence 613. Defendants further clarify that they do *not* intend to reargue that Wand failed to exhaust his administrative remedies as to his claim against Johnson. To the extent Wand seeks a ruling that defendants are precluded from arguing failure to exhaust, that request is granted. However, defendants may obviously cross-examine Wand about factual statements in his inmate complaint, including any statement he may have made about Kramer not working earlier on February 13th. Moreover, defendants may submit evidence and argument about when Kramer was actually working, since they were not obligated to raise this issue at summary judgment. Accordingly, this motion is GRANTED in part and DENIED in part.

**MIL 11 (Dkt. #295)**

Wand asks that the court exclude evidence of other lawsuits filed by his incarcerated witnesses. Defendants do not object, provided that Wand not introduce evidence of

inmate complaints related to those other lawsuits, which as previously ruled above he may not do. Since the court is reserving on the admissibility of other inmate grievances involving defendants, the court will RESERVE on this motion as well, subject to further clarification by either party during the FPTC.

**MIL 12 (Dkt. #296)**

Wand seeks an order sequestering witnesses other than defendants. Since defendants do not object and this is consistent with the court's practice upon a request by either party anyway, that motion is also GRANTED.

**MIL 13 (Dkt. #297)**

Wand seeks an order permitting him to raise arguments related to the DOC's policies and procedures. To the extent such policies are relevant to Wand's claims, the court agrees they are admissible. The court further notes that Wand has included numerous policies on his exhibits list. Since Wand has not proffered the details of these policies, their possible relevance and the form he intends for them to be admitted, this motion is RESERVED for further discussion during the FPTC and ruling on any objections interposed by defendants to their admission.

**MIL 14 (Dkt. #298)**

Wand seeks an order admitting the audio/visual recording of defendants' Zoom depositions. Defendants object because they will be testifying in person and the deposition transcripts will be used at trial. As the court previously indicated Wand may be permitted to admit *portions* of those recordings during trial as statements of a party opponent, but only to the extent reasonable in length, designated *in advance and*, as contemplated by the

court's earlier order, *not cumulative*.  Moreover, the court agrees that use of the video to impeach will likely be unwieldy.  Accordingly, the court RESERVES on this motion for further discussion at the FPTC.

**MIL 16 (Dkt. #300)**

Wand seeks an order excluding evidence of defendants' awards or commendations or the absence of discipline.  Defendants object, arguing this evidence is relevant.  Given that the court is severely restricting limiting Wand's ability to submit evidence related to either defendant's prior bad acts under Rule 404(b), there should be no need to bolster either defendant's character or reputation for honesty, and admission of this evidence may confuse the issues and unfairly prejudice Wand depending on its arguable relevance.  Additionally, this evidence may tend to be excludable under the hearsay rules.  Still, to the extent defendants would admit such evidence to prove their training and experience, the court is disinclined to rule in the abstract.  Accordingly, the court will RESERVE on this motion pending a proffer at the FPTC or ruling on formal objections to their admission to the extent designated as exhibits.

**B.    Defendants' motions in limine (dkt. #304)**

Defendants also seek four rulings of their own.

**MIL 1**

First, defendants ask that the court exclude any evidence related to Wand's allegation that he received inadequate care after being released from the hospital, including billing statements, since the court dismissed Wand's only claim in this lawsuit challenging his medical care after returning to WSPF following the removal of his appendix.

Specifically, the court dismissed without prejudice Wand's claim *against Jolinda Waterman* for medical care she provided after he returned to WSPF, on the ground that Wand had failed to exhaust his administrative remedies with respect to that claim.  In opposition, Wand states that because Waterman is a defense witness, he should be allowed to impeach her.

Although Wand is free to cross-examine Waterman in a manner that attacks her credibility, he may not ask her any questions that challenge Waterman's or any other WSPF official's handling of his medical care when he returned to WSPF.  Even though the court will likely grant defendants' motion to this extent as to proof of liability, without reviewing what billing statements Wand intends to admit or questioning Waterman about them, the court has no basis to exclude them completely, especially since it is conceivable that billing statements from Gunderson Hospital may contain information relevant to his claims to damages, including for pain and suffering Wand experienced due to delayed medical attention.  Accordingly, this motion is RESERVED for further discussion during the FPTC and in review of exhibits for which an objection has been interposed.

**MIL 2**

Defendants also seek to exclude argument or evidence regarding (a) Wand's surgical complications and (b) permanent injury or future care and treatment.  Wand represents that he does not seek damages for permanent injury or future care and treatment, so that portion of defendants' motion will be granted without further discussion.

As to the surgical complications, there is no dispute that Wand experienced complications, although their severity was not identified until February 21.  Wand claims

11

he first developed symptoms of appendicitis on February 12, and it is undisputed that Wand was taken to Gunderson Hospital on February 14, where he underwent an appendectomy.  While at Gunderson, Wand developed a post-surgical infection, with complications including plural effusions and an abscess, requiring a two-week hospital stay at UW Hospital starting February 21 or 22.  Therefore, defendants maintain that Wand's damages are limited to his pain and suffering between 11:30 p.m. on February 12, 2018, when he first had symptoms, until February 14, 2018, when he was sent to the hospital, and that other evidence about Wand's hospital stays is inadmissible under Rule 403 as confusing and unfairly prejudicial.

In support, defendants point out that Wand testified during his deposition that no medical professional has told him that Kramer did anything wrong, which, unless uttered by one of the defendants, would likely be inadmissible hearsay anyway.  Additionally, although Wand disclosed Registered Nurses Jodie Eckert and Justin Enright as experts, Wand has not represented that either expert will testify that:  (1) Nurse *Kramer* mishandled Wand's post-surgery medical care; or (2) the delay in sending him to the hospital caused any of his post-surgery complications.  On the other hand, to the extent the jury finds that either defendant's deliberate indifference delayed his needed treatment, it may not be unreasonable for the jury to find it more likely than not that the delay contributed to such a negative outcome as a matter of common sense and lay knowledge as to the typical outcome of an appendectomy.  Even so, Wand appears to concede that his post-surgery complications may be unfairly prejudicial and confusing at least as to liability of these defendants, and the court will RESERVE pending further argument at the FPTC.  Wand

may also proffer any evidence of his hospital stay at Gunderson, since such evidence may be necessary to provide adequate context regarding his condition and treatment at the hospital, including in particular when he first arrived there, and to his subsequent pain and suffering.

Regardless of any line drawing as to the appropriate period to consider liability or damages, neither Wand nor any other lay witness may render medical opinions regarding medical causation, diagnoses, tests and procedures. *See Pearson v.* Ramos, 237 F.3d 881, 886 (7th Cir. 2001) ("A nonexpert is not permitted to give expert testimony.  Wholly lacking in medical knowledge as he was, the plaintiff was incompetent to testify on the causal relation if any between exercise and healthy gums."); *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (lay opinion testimony is not permissible regarding "specialized explanations or interpretations that an untrained layman could not make") (citations omitted).  Even so, plaintiff and other lay witnesses may testify about their *own* perception of his physical and mental health before and after his appendectomy, including his subjective belief as to what he was experiencing, provided that this testimony does not exceed lay opinion under Federal Rule of Evidence 701.  Similarly, defendant may challenge those lay observations on cross-examination.  Should the parties need further guidance about the limits of the evidence Wand may seek to admit related to his damages, they should be sure to address it to the court during the FPTC.

### MIL 3

Defendants seek to exclude all testimony, evidence, arguments and questions regarding details of other legal cases in which defendants have been involved that are

unrelated to their interactions with plaintiff related to this case, other inmate grievances unrelated to this case, or their work file history on relevance grounds and under Federal Rules of Evidence 801, 802, 404(b) and 403.   Wand objects, but only indicates an intention to submit other inmate grievances, not lawsuits.   The court addressed the admissibility of inmate grievances involving defendants above in plaintiff's MIL 9, and although it does not appear that Wand intends to submit evidence of other cases involving defendants, it will RESERVE on this motion, for further discussion during the FPTC, just as it did as to plaintiff's MIL 9.   Moreover, as previously explained, absent a proffer by Wand of a case or cases in which either defendant was found liable for acting with deliberate indifference or negligence under circumstances like that here *and* reason to find that such evidence is relevant to show motive, intent, preparation, plan, absence of mistake, or lack of accident under Rule 404(b), the court will likely grant this motion.

**MIL 4**

Finally, and similarly, defendants seek to exclude all testimony, evidence, argument and questions regarding details of lawsuits related to the DOC or any other DOC employees under Federal Rules of Evidence 404(b) and 403.   Wand argues that he should be able to inquire into other prior acts of deliberate indifference, citing Kramer's testimony during her deposition, which he claims suggests that he was not sent to the hospital earlier because of a systematic deficiency within WSPF's HSU.   As explained in plaintiff's MIL 4, however, Wand is not proceeding on a systematic deficiency claim in this lawsuit, and Wand has not suggested that other lawsuits involving the DOC or other DOC officers would support such a theory.   Therefore, this motion is well-taken and GRANTED.

## V.     Witnesses

The court has already addressed Wand's requests for subpoenas and writs of habeas corpus ad testificandum in a separate order.  (*See* dkt. #355.)  Although both sides have now objected to that order in separate responses (dkt. ##360 & 364), the court took up by telephone hearing today, as well as plaintiff's untimely motion to strike defendants' expert disclosures (dkt. #361), all of which will be addressed in a separate order.

## VI.    Trial exhibits

Wand objects to the admission of Defendants' Exhibits 512, 513, 514, 515, 519 and 521, conduct reports received by Wand (Exs. 512-515), along with those received by incarcerated witnesses Andre Robinson (Ex. 519), and Reed (Ex. 521), which have been filed as attachments to dkt. #309.  The court will not permit Wand to call Robinson as a witness, so that objection is moot.  As for Wand's and Reed's conduct reports, those exhibits include documents for conduct reports in which Wand was charged with and adjudicated guilty of:  theft (Ex. 512); possession of contraband, disobeying orders and unauthorized transfer of property (Ex. 513); disobeying orders and lying (Ex. 514); and disobeying orders, disrespect, disruptive conduct and lying (Ex. 515).  Similarly, Reed was charged with and adjudicated guilty of theft and lying (Ex. 521).

Consistent with the court's ruling as to Plaintiff's MIL 5, defendants may *question* Wand and Reed about instances in which they were adjudicated guilty of lying by the DOC.  So long as each answers a simple "yes" to a basic question to that effect, the court will sustain Wand's objections to the admission of any of these exhibits.  If they deny those

15

adjudications, then defendants may only seek to use Exhibits 514, 515 or 521 to refresh or impeach, and even if grounds exist for their admission, then defendants must redact from those exhibits any information about the other charges in those conduct reports.

Defendants have not yet objected to Wand's exhibits, which have been filed at dkt. ##340-1 and 340-2.  However, as addressed previously, since Wand includes several policies on his list (Exs. 9-14, 23-27, 53-65, 82-83, 300-306, 333-341), the court will require Wand to explain the relevance of these policies to his claims during the FPTC. Additionally, Wand includes exhibits containing his medical records from UW Hospital (Exs. 161-293), which for reasons also addressed above, may not be relevant, at least to his claims of liability at trial.  Prior to the FPTC, the parties are encouraged to meet and confer (virtually) in an effort to reach an agreement about the admissibility of these, and any other, exhibits that may be in dispute, as well as reduce their exhibit and witness lists based on the rulings above.  To the extent disputes remain, however, the court will address them as part of the FPTC process.

## ORDER

IT IS ORDERED that:

1) Plaintiff Armin Wand's MIL 1 (dkt. #285) is GRANTED.

2) Plaintiff's MIL 2 (dkt. #286) is GRANTED.

3) Plaintiff's MIL 3 (dkt. #287) is DENIED.

4) Plaintiff's MIL 4 (dkt. #288) is GRANTED in part and DENIED in part.

5) Plaintiff's MIL 5 (dkt. #289) is RESERVED.

6)  Plaintiff's MIL 6 (dkt. #290) is GRANTED.

7)  Plaintiff's MIL 7 (dkt. #291) is GRANTED.

8)  Plaintiff's MIL 8 (dkt. #292) is DENIED.

9)  Plaintiff's MIL 9 (dkt. #293) is RESERVED.

10)   Plaintiff's MIL 10 (dkt. #294) is GRANTED in part and DENIED in part.

11)   Plaintiff's MIL 11 (dkt. #295) is GRANTED.

12)   Plaintiff's MIL 12 (dkt. #296) is GRANTED.

13)   Plaintiff's MIL 13 (dkt. #297) is RESERVED.

14)   Plaintiff's MIL 14 (dkt. #298) is RESERVED.

15)   Plaintiff's MIL 16 (dkt. #300) is RESERVED.

16)   Defendants motion in limine (dkt. #304) are GRANTED in part and RESERVED in part as set forth above.

17)   The parties are directed to proceed as to trial witnesses and exhibits are set forth above.

Entered this 10th day of May, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge